## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:07cr122-1

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **BOBBY LEE MEDFORD.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on defendant's oral Motion to Strike Requirement to Reimburse Court Appointed Counsel Fees. On November 18, 2008, the district court delegated to the undersigned such motion for hearing and for submission of a Memorandum and Recommendation concerning disposition of such motion in accordance with 28, United States Code, Section 636(b)(1)(B).

## FINDINGS AND CONCLUSIONS

### I.    Background

In obedience to such instructions, the court calendared and called an evidentiary hearing on December 4, 2008, at which both the government and defendant appeared with counsel. At the hearing, trial counsel for defendant argued matters based upon documents that were not then before the court. During the government's argument, the government made an oral motion requesting that the defendant's monthly payment for  reimbursement for counsel fees and expenses be

increased based on the elimination of the costs of necessities of life due to his incarceration. While the court heard arguments, all parties were allowed up to and inclusive of December 18, 2008, to file affidavits with attached exhibits which would support those arguments and which would answer questions propounded by the court. Both the defendant and the government made filings but those filings were not in the form of affidavits as had been directed by the court. Despite these lapses, the undersigned has gone forward to consider the oral motions of the defendant and the government and to enter the following Memorandum and Recommendation.

## II.     Procedural History

### A.     Appointment of Counsel

In order to understand the posture of the pending motion, it is important to first understand the origin of the requirement that the defendant pay for the cost of his court appointed counsel.

The defendant was charged in a Bill of Indictment filed on December 11, 2007, with nine criminal offenses, including but not limited to, conspiracy to commit extortion, conspiracy to commit mail fraud, mail fraud and deprivation of honest services of a public official, conspiracy to commit money laundering and obstruction of state and local law enforcement. An initial appearance hearing was conducted by the undersigned for the defendant on December 13, 2007, at which time the defendant

advised the court that he was going to retain his own attorney. Further inquiry was made into the issue of counsel for the defendant on December 17, 2007, at which time attorneys Bob Long and Bill Parker of Asheville, North Carolina, made a limited appearance for the purpose of the arraignment and detention hearing of the defendant.

On December 27, 2007, the undersigned conducted a further inquiry into the issue of legal representation of the defendant. At that time, the defendant filed a financial affidavit (#21) and requested the court consider appointing counsel for him. The financial affidavit showed the defendant had income from retirement from "state and county and disability" in the amount of $5,600.00. The defendant and his sister own, as tenants in common, a dwelling house located in Asheville, North Carolina which had a fair market value of $110,000.00, but which was encumbered by a deed of trust and note in the amount of $73,000.00 The defendant, in the affidavit, also reported he had received $37,500.00 from a 401k plan, but the money was "spent." The defendant reported he had monthly expenses at that time as follows:

| Item | Payment |
| --- | --- |
| Mortgage | $ 800.00 |
| Car Payment | 300.00 |
| Rent | 370.00 |
| Premiere Credit Union personal loan | 250.00 |
| Visa Credit Card | 250.00 |
| Wells Fargo Credit Card | 250.00 |
| Utilities | 160.00 |

Child support payment for grandchildren        <u>800.00</u>

                                       Total      $3,180.00

After considering federal taxation of his gross income and other likely adjustments and deducting fixed monthly expenses of $3,180.00, it appeared that the defendant had at least $750.00 per month in excess income; however, the defendant did not have any liquid assets with which he could pay the fee of a privately retained attorney.

Based on the undersigned's own experience in the practice of law, which included representing criminal defendants in this court, the undersigned was aware that privately retained counsel with the experience to handle this type of case would require a substantial retainer as a condition of representation. Considering such income and the lack of liquid assets, the undersigned found the defendant would be unable to retain counsel to defend the criminal charges. The undersigned further considered Volume VII of the Guide to Judiciary Policies and Procedures § 2.05 and found the defendant would at least partially qualify for the appointment of counsel. The court appointed counsel for the defendant, but further ordered the defendant pay the sum of $750.00 per month, that being his amount of excess income, to the Clerk of Court of the United States as provided by 18, United States Code, Section 3006A(f) , until the entire amount of counsel's compensation was repaid by the defendant. Further, the undersigned determined that "the court will reconsider such

amount upon motion of either party showing a change of circumstances." Order, Docket Entry #29. After conducting an extensive search for qualified counsel without conflicts, Stephen P. Lindsay was appointed to represent the defendant in accordance with the provisions of Section 3006A(f).

### B. Appointment of Additional Counsel

Due to the complexity of the case, on April 5, 2008, Mr. Lindsay filed a Motion for Appointment of Additional Counsel (#118) to assist him with the defense of this case. By Order (#125) filed April 15, 2008, Honorable T.S. Ellis, III, United States District Judge, allowed the motion and appointed Victoria Jayne as additional counsel for the defendant. Such appointment was made in accordance with Section 3006A(f) and subject to reimbursement by defendant.

### C. Trial

The defendant's case went on to trial and which ended on May 15, 2008, when the jury returned its verdict of guilty as to all counts charged in the Superceding Bill of Indictment (#54).

### D. Sentencing

On October 10, 2008, a sentencing hearing was conducted by Judge Ellis. At the conclusion of the sentencing hearing, but before judgment was entered, counsel for defendant made an oral motion that the court relieve the defendant from the

Section 3006A(f)Order requiring him to make the monthly payment of $750.00.  See

Docket Entry #258 (transcript), at 170.   While a number of objections were made to

other matters, no motion or objection was made to the Presentence Report in advance

of the hearing on the issue of the payment of counsel fees.   After taking the oral

motion under advisement, the district court reserved decision and directed both sides

brief the issue.   No request was made that judgment be stayed pending resolution of

this particular issue. Inasmuch as defendant was Ordered remanded to the custody of

the United States Marshal as of October 28, 2008, following surgery, the district court

entered its Judgment on November 3, 2008, because the Bureau of Prisons could not

conduct its classification and address defendant's medical needs until the Judgment

was entered.

### E.    Motion for Relief From Payment of Counsel Fees

In accordance with the briefing schedule implemented by the district court,

defendant filed his supporting brief (#247) on October 17, 2008, and the government

filed its responsive brief (#252) on October 31, 2008.   Defendant filed a Notice of

Appeal (#243)on October 9, 2008,[1] and the Judgment and Commitment (#254) was

filed on November 3, 2008.

---

[1]    After lodging the appeal, counsel for defendant filed on November 3,
2008, a motion with this court to relieve him from further representation of
defendant.  (Docket # 253).

**F.    Hearing on the Motion for Relief From Payment of Counsel Fees**

After the issues were briefed, the undersigned conducted an evidentiary hearing on December 4, 2008, at which defendant was present. At the hearing, the defendant was represented by Mr. Lindsay, Ms. Jayne, and also by new appellate counsel David Belser. The defendant did not present evidence.

First, Mr. Lindsay argued on behalf of the defendant that the defendant should be relieved from any obligation to pay the costs of his court appointed counsel based upon the fact there had been an error in the defendant's 2007 tax return inasmuch as $45,000.00 in charitable deductions had been mistakenly taken. He argued that such purported error would result in additional liability of $15,000.00 to $20,000.00 to the Internal Revenue Service. No evidence was submitted in support of this argument.

Second, Mr. Lindsay further argued that his motion was supported by the fact that the government had obtained a judgment for and indicated it would seek enforcement of the criminal  forfeiture of $287,776.00.  In support of these arguments, defendant proffered without objection a letter dated November 14, 2008 (Defendant's Exhibit #1), which had been sent by AUSA Thomas R. Ascik. In the letter, Mr. Ascik demands payment from the defendant in the sum of $287,776.00. Id.

Third, Mr. Lindsay argued the defendant's retirement benefits, consisting of Social Security benefits and retirement benefits paid by the State of North Carolina,

could possibly be in jeopardy and were subject to termination pursuant to federal law and to provisions of state law under N.C.Gen.Stat. § 128-38.4.

Fourth, and finally, counsel argued that requiring further payment would be inconsistent with Judge Ellis's finding in imposing a sentence that defendant did not have the financial ability to pay a fine. Mr. Lindsey argued that defendants should not, therefore, be required to pay sums for the reimbursement of his court appointed counsel fees. In support of this argument Mr. Lindsay directed the court to the findings as contained in the Presentence Report (#227) at paragraph 157.

As requested by defendant at the hearing, the court has reviewed the findings of the Pretrial Services Officer. An examination of paragraph 157 of the Presentence Report shows the following financial information and conclusions of such officer, which reflects defendants assets, liabilities, living expenses, and income as of September 26, 2008, which was before defendant was incarcerated.

Monthly Cash Flow
    Income

| | |
|---|---|
| Social Security | 1,764.00 |
| NC State Retirement | 3,093.00 |
| NC Sheriff's Association Retirement | 900.00 |
| Total Income: | 5,757.00 |

Reported Living Expenses

| | |
|---|---|
| 85 ½ Main Street, Weaverville Apartment (Rent) | 370.00 |
| Groceries (Defendant pays sister) | 300.00 |
| Electric (Weaverville Apartment) | 60.00 |

| | |
|---|---|
| Telephone (Weaverville Apartment) | 70.00 |
| Transportation (Pays Judi Bell for errands) | 100.00 |
| Health Insurance | 75.00 |
| Clothing | 25.00 |
| Townhouse mortgage payment | 803.00 |
| Townhouse property taxes | 80.00 |
| Premiere Credit Union Loan Payment ($4,000 loan) | 122.00 |
| Premier Credit Union Credit Card | 61.00 |
| Wells Fargo Credit Card | 150.00 |
| Car payment | 260.00 |
| U.S. Clerk of Court (attorney's fees) | 750.00 |
| GDS monthly fee | 146.00 |
| Voluntary Child Support/3 grandchildren | 575.00 |
| Total Expenses: | $ 3,947.00 |

NET MONTHLY CASH FLOW:      $ 1,810.00

The Presentence Report further included the assets and indebtedness of the defendant.

The following is a synopsis of the Presentence Report concerning the defendant's

assets and indebtedness:

### ASSETS

Cash

| | | |
|---|---|---|
| Premiere Credit Union (checking account) | | 400.00 |
| Premier Credit Union (savings account) | | 62.00 |
| | Total | $ 462.00 |

Equity in Other Assets

| | |
|---|---|
| Real Estate - tax value  (125,000.00) | 0 |
| 181 Woodfin Ave., Asheville (townhouse) | |
| 2003 Chevrolet Monte Carlo | |
|   (Kelley Blue Book Value $6,915/ owes $9,000) | (-$2,085.00) |
| Subtotal: | (-$2,085.00) |
| Total Assets: | ($1,623.00) |

Unsecured Debts:

| | |
|---|---|
| Wells Fargo | 4,300.00 |
| Premier Federal Credit Union | 1,700.00 |
| Mortgage Balance on townhouse | 75,000.00 |
| Total Unsecured Debt: | $81,000.00 |

NEGATIVE NET WORTH:                                    (-$82,623.00)

Inasmuch as Section 3006A(f) places on ongoing obligation on this court to review defendant's ability to reimburse the taxpayer for attorneys fees advanced on his behalf, the court has an obligation to only consider accurate, current information and is not bound by either outdated information or erroneous conclusions. As will be discussed below, defendant's cash flow picture has dramatically changed since September 2008 due to his incarceration. Further, and with all due respect to the Pretrial Services officer who compiled this report, it would appear that the Net Worth calculation is not accurate in that it does not follow Generally Accepted Accounting Principles.[2] First, the Presentence Report accurately reported the defendant and his

---

[2]      The undersigned is in no way ascribing error or lack of diligence to the Pretrial Services officer.  Such officers are assigned the daunting task of supervising pretrial detainees, probationers, and defendants on supervised release. In addition to such law enforcement duties, Guidelines Sentencing requires such officers to prepare the Presentence Report, which involves a variety of tasks including investigation of defendant's financial health.  The court does not expect these officers to be financial experts and any error in this case appears to be harmless, at least from the defendant's perspective, in that it enured to defendant's benefit at sentencing.  The court has undertaken the *de novo* evaluation which follows only because defendant has made the motion and it is required by Section 3006.

sister had inherited their parent's residence (townhouse) and that the tax valuation of the home was $125,000.00 with a mortgage balance of $75,000.00. While the court does not have a copy of the note or deed of trust, the court will assume that the $75,000.00 liability is defendant's obligation and not that of his sister. The error in the report comes about from Pretrial Services failing to ascribe any value to the townhouse which secured the obligation. A one-half interest in the townhouse would have a value of least $62,500.00. Further errors appear on the face of the report inasmuch as the report described the $75,000.00 mortgage as an "unsecured" obligation. Using the same information as provided in the report, a more accurate net worth evaluation that followed GAAP would have looked like this:

## NET WORTH OF DEFENDANT BOBBY LEE MEDFORD

ASSETS

Cash

| | | | |
|---|---|---|---|
| Premiere Credit Union (checking account) | | | 400.00 |
| Premier Credit Union (savings account) | | | 62.00 |
| | | Total | $ 462.00 |

Equity in Other Assets

| | | | |
|---|---|---|---|
| ½ Interest in 181 Woodfin Ave. | | | 62,500.00 |
| 2003 Chevrolet Monte Carlo | | | 6,915.00 |
| | | Total | $69,415.00 |

| | | |
|---|---|---|
| | TOTAL ASSETS: | $69,877.00 |

LIABILITIES

Unsecured Debt

|          |                      |             |
|----------|----------------------|-------------|
| Unpaid Balance of Car Loan |            | (9000.00)   |
| Wells Fargo |                          | (4,300.00)  |
| Premier Federal Credit Union |         | (1,700.00)  |
|          | Total                | (15,000.00) |

Secured Debt

| Mortgage Balance on Townhouse |         | (75,000.00) |
|----------|----------------------|-------------|
|          | Total                | (75,000.00) |

|          | TOTAL LIABILITIES:   | (90,000.00) |
|----------|----------------------|-------------|

NET WORTH:          Assets        $69,877.00
                    Liabilties    ($90,000.00)
                                  ($20,123.00)

Thus, defendant has a negative net worth of $20,123.00 rather than the negative net worth of $82,623.00 as reported in the September 2008 Pretrial Services Report.

Other evidence is also before the court concerning defendant's financial health, specifically his income. The government presented evidence through Mr. Rob Thornberry, who is the human resources director for Buncombe County, North Carolina. Mr. Thornberry testified that as of December 4, 2008, the defendant was receiving **$3,670.88** per month from the *North Carolina Local Government Employees Retirement System* and that he was receiving **$1,190.94** per month from the *Sheriffs' Supplemental Pension Fund of the State Treasurer's Office* for a total monthly income from state sources of **$4,861.82.** The undersigned notes that these

sums are in excess of those reported on the Presentence Report in the amount of $868.82 per month.

Inasmuch as defendant argued that his state retirement would be terminated due to his conviction on the charges in this matter, Mr. Thornberry was examined regarding whether or not Chapter 128-38.4 would have any impact on the monthly retirement benefits that are being paid to this defendant by either the *North Carolina Local Government Employees Retirement System* or the *Sheriffs' Supplemental Pension Fund of the State Treasurer's Office.* Mr. Thornberry was unable to answer this question of law.

The court has considered the plain language of the North Carolina Statute. This statute directs the Board of Trustees of the *North Carolina Local Government Employees Retirement System* to not pay any retirement benefits or allowances, except for a return of member contributions plus interest, to any member who is convicted of a felony under various state and federal laws. An examination of the statute shows the defendant, in this case, has been convicted of federal violations which are listed under the statute; however, a further examination of the statute shows the statute was made effective July 1, 2007, and is specifically applicable only to offenses committed on or after that date.

Comparing the language of the statute to the Superseding Bill of Indictment,

it appears to be clear that such statute would have absolutely no impact on any of defendant's retirement benefits. It was alleged by the Grand Jury, and later found by the Petit Jury in its Verdict, that defendant committed all of the criminal offenses before December 2006, when his term in office expired. Thus, it would appear that Chapter 128-38.4 could not be applied to cause any forfeiture of the retirement payments due to the defendant as listed above. The court has, however, accepted as true that defendant's federal retirement benefits received from the Commissioner of Social Security will have been terminated under the provisions of 42, United States Code, Section 402(x).

### G.    Post-Hearing Supplementation of the Record

Inasmuch as a number of arguments were made, but were unsupported by admissible evidence, the undersigned directed the defendant to submit in admissible form any additional information about his financial affairs which he wished the court to consider under Section 3006A(f). Specifically, the court provided defendant with an opportunity to submit evidence concerning: any changes in the income and expenses the defendant had listed upon his financial affidavit filed on December 27, 2007; any court Order that might direct the defendant to pay child support for his grandchildren; whether there were any tax withholdings that were being withheld from the payments of his retirement benefits; any information that he had regarding

any change in the defendant's income tax obligations; and what, if any, disposition had been made of the sum of $37,500.00 that had been withdrawn by the defendant from his 401K account.[3]

The undersigned also directed the government to provide information in the form of an affidavit regarding whether or not the *North Carolina Local Government Employees Retirement System* and the *Sheriffs' Supplemental Pension Fund of the State Treasurer's Office*, or either of them, were going to attempt to take any action to terminate retirement payments due to the defendant, pursuant to Chapter 128-38.4. The defendant and the government were allowed up to and including December 18, 2008, to file such supplemental evidentiary materials.

On December 18, 2008, the defendant filed a document entitled "Defendant Medford's Updated Pleading Relating to Counsel Fees." (Docket #267). Such filing consists of additional arguments by defendant as to why he should not be required to pay for the cost of his defense. These arguments included new arguments which had not been made at the hearing on December 4, 2008. The pleading does not contain any citation to any case law or other authority that supports the defendant's positions.

---

[3]     The court recalls from the testimony presented at trial that such lump sum was deposited into defendant's checking account after he left office in December 2006, but that such deposit had been exhausted by the end of January 2007.

Attached to the pleading was a copy of what appears to be an IRS Form 1040X for tax year 2006. This exhibit was not submitted in an admissible manner in that it was not attached to an affidavit which identifies such document. Orsi v. Kirkwood, 999 F.2d 86. 92 (4th Cir. 1993)(to be admissible in support of a motion, a document must be authenticated by and attached to an affidavit). Further, such document does not appear to be a copy of a public record and is not signed. The government has not, however, interposed any objection to the exhibit attached to the defendant's submission.

The government also filed on December 18, 2008, a pleading entitled "Government's Memorandum to the Court Regarding Defendant Medford's Attorney Fees." (Docket #268). Attached to this memorandum is a copy of General Assembly of North Carolina Session 2007 Session Law 2007-179 and Senate Bill 659. This exhibit is a public record and is admissible without affidavit in that it appears to be an accurate copy of the statute at issue. The government also presented letters from Garry H. Austin, Special Assistant to Senior Deputy Director of the Department of State Treasurer, regarding monthly payments made by the *Local Government Employee's Retirement System* to the defendant and also a letter from Diane N. Konopka, Deputy Director of the *North Carolina Sheriffs' Education and Training Standards Commission*, concerning payments made by the Sheriffs' Supplemental

Pension Fund to the defendant. Neither of these letters are attached to any affidavit nor are they in the form of an affidavit or a declaration made under penalty of perjury. The defendant has not objected to admission of these submissions.

## III. Discussion of Defendant's Motion

### A. Applicable Standard

Section 3006A(f) governs the provision of counsel for a defendant who does not have sufficient assets to pay for his defense, but does have sufficient income to pay for counsel over time. Such statute provides as follows:

> **(f) Receipt of other payments**.--*Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation*, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to subsection (e) to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, *current at the time of payment*, to carry out the provisions of this section. Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant.

18 U.S.C. § 3006A(f) (emphasis added). Thus, when the court obligates the taxpayer to advance fees and costs for a defendant who is able to pay over time, Congress imposes on the court a continuing obligation to determine whether defendant has the

-17-

ability to pay for his defense as such payments may become due. <u>Id.</u> Thus, defendant has properly invoked Section 3006A(f) for the court to further consider his financial ability.

Further guidance is given to the court in Volume VII of the *Guide to Judiciary Policy and Procedures,* which provides instructions and criteria to use in determining whether a defendant partially qualifies for the appointment of counsel as did the defendant in this case:

> **2.05** <u>**Partial Eligibility.**</u> If a person's net financial resources and income anticipated prior to trial are in excess of the amount needed to provide him and his dependents with the necessities of life and to provide the defendant's release on bond, but are insufficient to pay fully for retained counsel, the judicial officer should find the person eligible for the appointment of counsel under the Act and should direct him to pay the available excess funds to the Clerk of the Court at the time of such appointment or from time to time thereafter. Such funds shall be held subject to the provisions of subsection (f). The judicial officer may increase or decrease the amount of such payments, and impose such other conditions from time to time as may be appropriate. <u>Guide to Judiciary Policies and Procedures</u>, Volume VII, § 2.05.

### B. Jurisdiction to Hear Defendant's Motion

In his December 18, 2008, post hearing supplementation (Docket #267), the defendant raises for the first time a challenge to this court's jurisdiction to hear the instant motion, which defendant made at the sentencing hearing and before entry of judgment. Defendant argues that this court has no jurisdiction to hear his motion

inasmuch as this case is now on appeal to the Court of Appeals for the Fourth Circuit.

Defendant cited no authority in support of this argument. To assist the district court, the undersigned has examined this issue closely.

The court begins its analysis of the jurisdictional question with consideration of Rule 4(b)(3)(B), Federal Rule of Appellate Procedure, which provides as follows:

> A notice of appeal filed after the court announces a decision, sentence, or order—but before it disposes of any of the motions referred to in Rule 4(b)(3)(A)—becomes effective upon the later of the following:
>
> (i)     the entry of the order disposing of the last such remaining motion; or
>
> (ii)     the entry of the judgment of conviction.

Rule 4(b)(3)(B), Fed.R.App.P. In turn, the court notes that the motions referred to in Rule 4(b)(3)(A) do not include a motion to strike the requirement of payment of attorneys fees.

Next, the undersigned has considered reported cases of the Court of Appeals for the Fourth Circuit for guidance. In <u>Grand Jury Proceedings Under Seal v. United States</u>, 847 F.2d 1188 (4th Cir. 1991), the appellate court held as follows:

> The general rule is that the filing of a timely and sufficient notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the district court to the court of appeals.
> The rule is not absolute, however. One exception to the rule is that a district court does not lose jurisdiction to proceed as to matters in aid of the appeal. The rule is a judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same

issues before two courts at the same time.

Id., at 1190 (citations and corresponding quotation marks omitted). In other appellate and trial court decisions found in the Fourth Circuit, courts have determined that "in aid of the appeal" properly included the following trial court actions:

(1)    "[t]he district court aided in this appeal by relieving us from considering the substance of an issue begotten merely from imprecise wording in the injunction," Lytle v. Griffith, 240 F.3d 404, 408 (4th Cir. 2001);

(2)    the district court considered a Rule 60(b) motion while the case was on appeal, Fobian v. Sorage Technology Corp., 164 F.3d 887 (4th Cir. 1999);

(3)    deciding a motion for summary judgment after an uncertified interlocutory appeal had been filed, Minus v. Dak Americas LLC, 2005 WL 3968030 (D.S.C. 2005)[4];

(4)    entry of an order concerning sanctions, because "the sanctions issue will be taken up on appeal, and because this court's earlier ruling did not fully set forth the details of the misconduct . . . .", Network Computing Services Corp. v. Cisco Systems, inc., 223 F.R.D. 392 (D.S.C. 2204); and

---

[4]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

(5)     where asked to grant an injunction during the pendency of an appeal, the

district court determined such would be in aid of the appeal inasmuch as the

issue would "not impede in any way the Fourth Circuit's consideration of the

issues on appeal," <u>Crutchfield v. U.S. Army Corps of Engineers</u>, 230

F.Supp.2d 673, 680 (E.D.Va. 2002).

While a case involving a motion to strike a preexisting requirement that a defendant

reimburse attorneys fees cannot be found in the case law addressing "in aid of the

appeal," either in the Fourth Circuit or any other circuit, it would appear to the

undersigned that such a matter has all the *indicia* of being "in aid of the appeal"

inasmuch as it is presently not at issue before the appellate court and, if it is placed

in issue, a decision of this court would be helpful in that it would provide the

appellate court with a more complete record.  Further, inasmuch as appellate courts

do not normally consider matters not first raised in the trial court, such consideration

by this  court would be of assistance to the parties in properly raising the matter with

the appellate court. Indeed, the motion was made by defendant before judgment

entered and before appeal was taken.  Further, defendant filed his Notice of Appeal

eight days before his brief was due on his motion to strike reimbursement. Thus, the

undersigned finds that this court retains jurisdiction over this issue as its resolution

would be "in aid of the appeal."

## C. Mootness

The next issue raised, and again which was not briefed by the defendant, concerns whether the issue of the reimbursement of attorney fees by the defendant is moot. Defendant contends, without citing any authority, that because the district court did not include a requirement of repayment of attorneys fees in the Judgment, the Judgment supercedes by way of omission the undersigned's earlier Order requiring the payment of fees.

First, the district court clearly did not intend to simply forego the issue of fees in the Judgment as is evidenced by the district court's inclusion and incorporation of the sentencing transcript in the Judgment. Second, as discussed above, the district court clearly placed on the record its reservation of decision on defendant's oral motion to strike the requirement of paying fees pending briefing. Third, the district court entered its Judgment in a expedited fashion to accommodate the medical needs of the defendant inasmuch as the Bureau of Prisons could not begin the process of classification and placement of the defendant in an appropriate facility until the Judgment is entered. Had the district court not acted promptly, defendant would have languished in county jail facilities, which defendant has time and again informed the court do not adequately accommodate his medical needs. Fourth, at the time Judgment was entered, it was unclear (and it remains unclear inasmuch as the final

bills are not yet in) what precise amount the defendant will ultimately owe for his defense. The issue is not, therefore, moot.

### D. Income

#### 1. Social Security Retirement Benefits

The defendant, in the argument by counsel at the December 4, 2008, hearing and in the defendant's submission of December 18, 2008 (Docket #267), argues that the defendant's Social Security benefits will be terminated by the Social Security Administration. No authority has been cited by the defendant but the undersigned takes judicial notice that the Social Security Administration will, as mentioned above, terminate the Social Security benefits of the defendant now that he has been taken into custody. 42 U.S.C. § 402 (x)(1)(A)(i). As a result, the undersigned fully credits defendant's argument that his Social Security benefits are no longer available for payment of the costs of his defense under Section 3006A(f).

#### 2. State Retirement Income

Defendant has argued that the *Local Government Employees' Retirement System* and the *North Carolina Sheriff's Education and Training Standards Commission* will terminate the retirement benefits paid to the defendant from the *North Carolina Local Government Employees' Retirement System* and the retirement payments being made to the defendant from the *Sheriffs' Supplemental Pension Fund*,

both pursuant to Chapter 128-38.4. As briefly discussed above, an examination of the statute clearly shows such projected termination cannot lawfully take place under current law.

Clearly, the cited statute applies only to acts committed after July 1, 2007. As stated above, an examination of the Superseding Bill of Indictment shows that the criminal acts committed by the defendant predated, by a substantial period of time, the effective date of Chapter 128-38.4. While not properly in evidence, both the letter of Garry H. Austin, Special Assistant to the Senior Deputy Director of the Department of State Treasurer and the letter of Diane Konopka, Deputy Director of the North Carolina Sheriffs' Education and Training Standard Commission, reference the payments made by each respective entity will not be terminated, pursuant to Chapter 128-38.4. Thus, there is no legal basis for defendant's argument and if the letters were considered (inasmuch as they were unobjected to) there is evidence that the State of North Carolina has determined it cannot seek termination of such benefits.

The defendant's argument thus provides no basis to reduce or terminate the Order directing the defendant to reimburse the government for the costs of his court appointed counsel.

### E. Liabilities

### 1.      Income Tax Liabilities

The defendant argued both orally and in his written submissions that he is now obligated to pay the Internal Revenue Service substantial amounts of money based on corrections he has made to his 2006 income tax return and as a result, he should be released from the requirement that he reimburse the costs of his court appointed counsel. Insofar as no objection to admission has been interposed by the government, the undersigned has considered the purported amended tax return annexed to the defendant's filing of December 18, 2008. The document appears to be a Form 1040X which indicates that he owes $12,248.00 in taxes.

Even if the court were to add this liability to defendant's corrected Net Worth statement, the fact the defendant might owe sums of money in the form of unpaid taxes is not relevant to the Section 3006A(f) consideration of whether or not the defendant has the ability to pay for the cost of his court appointed counsel. In determining what obligations are to offset income, Volume VII of the Guide to Judiciary Policies and Procedures § 2.05 requires the court to consider only what are the defendant's "necessities of life". The paying of past due income taxes is not the payment for a "necessity of life." The Internal Revenue Service has various and sundry means at its disposal to collect unpaid income taxes, including the obtaining of a Judgment and the execution upon any property that would not be exempt from

execution.

Indeed, based on the testimony received at trial, it is reasonable for the court to assume that the $12,248.00 for tax year 2006 is but a drop in the bucket of the defendant's tax liabilities. Inasmuch as bribes are income, and it appearing from a review of the evidence presented at trial that defendant did not declare such bribes, it is very likely that he will have substantial tax, interest, and penalty obligations that well exceed the amounts attributable to a misstatement of charitable contributions in one tax year. As a result, the undersigned concludes that any liability for the payment of past due income taxes should not be considered by the court in determining whether or not to reduce or increase any obligation of the defendant to repay the costs of his court appointed counsel as such do not amount to "necessities of life." Simply because a defendant who has substantial income owes taxes is no reason why he should not be required to pay the costs of his defense. The undersigned will not recommend that any reduction be allowed in the monthly payment based on the obligation to pay taxes.

## 2. Criminal Forfeiture

The defendant also argues that his obligation to pay for his own defense be reduced or eliminated based on the imposition of a substantial criminal forfeiture. This argument is simply a thinly veiled argument that "crime should pay."

To set aside or reduce the defendant's obligation to pay his attorneys fees - -

even though he has sufficient income to pay the fees over time - - because he is now

obliged to disgorge the fruits of criminal conduct (or pay taxes) would be a perversion

of justice. Such would not be unlike the case where defendant argued he should only

be liable for the net profit rather than gross proceeds of his continuing criminal

enterprise, which the Court of Appeals for the Fourth Circuit found would

> create perverse incentives for criminals to employ complicated
> accounting measures to shelter the profits of their illegal enterprises.

United States v. McHan, 101 F.3d 1027 (4th Cir. 1996). In essence, defendant is

arguing in this case that the court should allow his ill-gotten gains (and unpaid taxes)

to serve as a credit against the costs of his defense. This is not unlike a bank robber

asking the court to allow him to use the cash, stolen from the bank and covered in

dye, to be taken out of evidence for purposes of paying his privately retained counsel.

A defendant who has the resources to fund his own defense should shoulder

those costs even if it means he has to make monthly payments. Shifting that burden

to the shoulders of the innocent taxpayer is neither appropriate nor envisioned by 18

U.S.C. § 3006A(f). The undersigned will not recommend that any reduction be

allowed in the monthly payment based on the imposition of a criminal forfeiture.

> **F.    Ability to Pay a Fine**

Defendant has argued that due to the fact that Judge Ellis found, at sentencing, that defendant did not have the financial ability to pay a fine, such finding is *res judicata* as to whether defendant has the financial ability to pay counsel fees. Further, defendant argues that requiring him to pay counsel fees would be punitive.

As to the district court's determination of a fine, 18, United States Code, Section 3572 lists the factors that are to be considered by the court in determining whether to impose a fine:

(a)   **Factors to be considered**.     In determining whether to impose a fine, and the amount, time for payment, and method payment of a fine, the court shall consider, in addition to the factors set forth in section 3553(a)---

(1)   the defendant's income, earning capacity, and financial resources;
(2)   the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;
(3)   any pecuniary loss inflicted upon others as a result of the offense;
(4)   whether restitution is ordered or made and the amount of such restitution;
(5)   the need to deprive the defendant of illegally obtained gains from the offense;
(6)   the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;
(7)   whether the defendant can pass on to consumers or other persons the expense of the fine; and
(8)   if the defendant is an organization, the size of the

organization and any measure taken by the organization to discipline any officer, director, employee, or agent of the organization responsible for the offense and to prevent a recurrence of such an offense.

**(b)      Fine not to impair ability to make restitution.**– If, as a result of a conviction, the defendant has the obligation to make restitution to a victim of the offense, other than the United States, the court shall impose a fine or other monetary penalty only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution.

18 U.S.C. § 3572.

The factors to be considered in determining whether a defendant should be required to pay a fine and the amount of such fine are entirely different than those used to determine whether a defendant should be required to reimburse the government for the costs of his court appointed counsel.  Under Rule 44, Federal Rules of Criminal Procedure, and Section 3006A, the court considers in determining whether a particular defendant can afford counsel the defendant's net financial resources and income, and whether such are in excess of the amount needed to provide him and his lawful dependents with the necessities of life.

The doctrine of *res judicata,* or claim preclusion, holds that once a claim has been litigated and resolved, it may not be reasserted elsewhere.  It bars attempts to relitigate or restate claims that have been resolved in another court proceeding.  HMK Corp. v. Walsey, 637 F. Supp. 710, 716-18 (E.D. Va. 1986), aff'd, 828 F.2d 1071 (4th

Cir. 1987), <u>cert.</u> <u>denied</u>, 484 U.S. 1009 (1988). Under <u>Martin v. American</u> <u>Bancorporation Retirement Plan</u>, 407 F.3d 643, 650 (4th Cir. 2005), *res judicata* applies where there is a final judgment on the merits of the claim, there is an identity of the cause of action in both suits, and there is an identity of the parties. <u>Id.</u>

While similar facts are reviewed in making the determination of fine and the determination of ability to afford counsel, such similarity of underlying facts is not sufficient to amount to preclusion. Just as the undersigned's finding that defendant could partially afford counsel did not mandate that the court impose a fine, the district court's decision that defendant did not have the ability to pay a fine does not wipe out his obligation to pay for his defense. When the criteria for appointment of counsel are laid side-by-side with the criteria for imposition of a fine, the similarity ends at Section 3572(a)(2), leaving five relevant additional considerations to determine whether the imposition of a fine is appropriate. (In addition, Section 3572(b) would require that a fine not impair the ability of a defendant to make restitution.) Thus, it does not appear that the district court's determination concerning a fine has any *res judicata* impact on defendant's ability to pay a fine. Further, it appears that the district court even considered defendant's obligation to pay for his defense in making its determination that no fine would be imposed.

Finally, defendant has in no way supported his argument that requiring him to

pay his attorneys fees is "punitive."  Indeed, the court would assume that co-defendant Guy Penland, who stood trial with defendant, paid fees for his privately retained attorney that were on par with those advanced by this court on defendant's behalf.  It cannot be said under any legal principle that payment of attorneys fees, either by a defendant who can afford to pay such fees in advance or by a defendant who has such fees advanced for him under Section 3006A(f),  is punitive.  The purpose of requiring a financially able defendant to pay the costs of his court appointed counsel fees is to both obtain adequate representation for a defendant, while having the otherwise able defendant reimburse the taxpayer for the benefits he received from such representation.  The requirement to pay fees is thus in no way punishment.  The undersigned considers that any findings regarding the payment of any fine are irrelevant to the issue of repayment for counsel fees.

The undersigned will recommend that the defendant's argument as to *res judicata* and punishment be denied as without basis in law or fact.

### G.    Financial Circumstances of the Defendant.

While the composite parts of this argument have been examined discreetly above, the court will also consider such arguments in combination. The court will, as required by Section 3006A(f) examine the present financial circumstances of the defendant to determine whether or not to recommend that the district court allow the

defendant's motion or, based upon the oral motion of the government, to recommend an increase in the amount of payment.

As to income, in the defendant's December 27, 2007, financial affidavit (#21), the defendant averred that he was then receiving $5,600.00 per month in "retirement from state and county and disability". That would equate to an annual income of $67,500.00. While not in evidentiary form, the court will - -because it would assist defendant - - consider and credit the argument of counsel that he is no longer receiving Social Security payments as such argument finds support in federal law. Thus, the court will deem that any income defendant is now receiving is limited to any pension or disability payments he is receiving from the State of North Carolina. Evidence from defendant on this matter is contained in his financial affidavit, in which he avers he is receiving approximately $5,600.00 monthly from such sources. (The affidavit does not break out the amount he was then receiving from Social Security.) Another source of information is the Presentence Report which shows that the monthly income from retirement benefits, excluding Social Security payments of the defendant, would be in the amount of $3,993.00. The court will consider the two letters submitted by the government. Based on such letters, defendant is currently receiving the gross amount of $3,670.88 per month from the Local Governmental Employees' Retirement System and the gross amount of $1,190.94 per month from

the Sheriff's Supplemental Pension Fund. This report of payments is supported by the sworn testimony of Mr. Thornberry and the court finds such testimony to be more reliable than the amounts of income set forth in the Presentence Report or in defendant's affidavit, and that such testimony is buttressed by the letters. The undersigned finds the defendant is presently receiving the gross amount of $4,861.82 monthly, which would be an annual gross income of $58,341.84.[5]

The court will now determine the monthly expenses of the defendant related to necessities of life for the defendant or any of his lawful dependents in accordance with the Guide to Judiciary Policies and Procedures, Volume VII, § 2.05. On December 27, 2007, in his financial affidavit, the defendant reported the following monthly expenses:

| | |
|---|---|
| Mortgage on house | 800.00 |
| Car | 300.00 |
| Rent | 370.00 |
| Premier Credit Union Personal Loan | 250.00 |
| Visa Credit Card | 250.00 |
| Wells Fargo Credit Card | 250.00 |
| Utilities | 150.00 |
| child support for grandchildren | 800.00 |
| Total | $3,170.00 |

In the Presentence Report (#227) filed on September 26, 2008, before defendant was

---

[5]      Again, the court has assumed that defendant's Social Security benefits will be terminated.

incarcerated, there was reported that the defendant had the following monthly expenses:

| | | |
|---|---|---:|
| Weaverville Apartment (Rent) | | 370.00 |
| Groceries | | 300.00 |
| Electric | | 60.00 |
| Telephone | | 70.00 |
| Transportation | 100.00 | |
| Health Insurance | | 75.00 |
| Clothing | | 25.00 |
| Townhouse mortgage payment | | 803.00 |
| Townhouse property taxes | | 80.00 |
| Premiere Credit Union Loan Payment | | 122.00 |
| Premier Credit Union Credit Card | | 61.00 |
| Wells Fargo Credit Card | | 150.00 |
| Car payment | | 260.00 |
| U.S. Clerk of Court (attorney's fees) | | 750.00 |
| GDS monthly fee | | 146.00 |
| Voluntary Child Support/3 grandchildren | | 575.00 |
| Total Expenses: | | $3,947.00 |

The undersigned has reviewed each of these expenses to determine whether or not any of these expenses can be classified as "necessities of life." At the present time, and for the foreseeable future, the defendant's housing, medical, food and clothing needs are being supplied by the Bureau of Prisons. As a result, the expenses for rent, groceries, electric, telephone, transportation, health insurance, clothing, townhouse mortgage payment, townhouse property taxes, credit union loan and credit card payments, Wells Fargo Credit Card payment, and car payment cannot be classified as "necessities of life". The defendant is presently incarcerated and he is no longer

paying the GDS monthly fee.

On a more sensitive note, the court is cognizant that the defendant is paying voluntary child support for his grandchildren; regardless of how generous such an undertaking may be, such a payment appears to be a gratuitous payment and is not a necessity of life for any legal dependent. The defendant was invited by the court to provide documentation that he was subject to a court ordered obligation to pay child support, but such document, if any exist, was not presented.

Based on all the evidence presented, the court finds the defendant's financial situation from an expense standpoint has been improved by incarceration as he is now not required to pay any costs or expenses of any necessities of life. The monthly expenses of the defendant for the necessities of life are zero ($0.00).

Turning next to assets or net worth, it does not appear that Section 3006A(f) provides for consideration of *negative* net worth or assets in the ability to repay the taxpayer. This appears to be for very good reasons: (1) first, any person with substantial net worth would not qualify for appointment of counsel under Section 3006A(f); and (2) regardless of whether a person has zero net worth or negative net worth, the result is the same - - he has no assets from which to pay counsel. Indeed, Section 3006A appears to be designed precisely for a person with few to no assets, but with substantial income. The fact that defendant's actual net worth of negative

$20,123.00 could be negative $32,371.00 (adding in the $12,248.00 tax liability), or even negative $320,147.00 (adding in the joint criminal forfeiture of $287,776.00), has no impact on his ability to pay for his own defense as payment of such liabilities - -some of them representing ill-gotten gains - -does not take priority over his obligation under Section 3006A(f) to pay for his own legal defense from any income he may have. Taking defendants net worth into consideration under Section 3006A, he simply has no assets from which to pay for counsel; however, considering his income after the necessities of life, he has substantial income from which to pay for his own defense over time, as discussed below.

Defendant is now receiving annual gross income of $58,341.84. The undersigned estimates by applying current federal and state tax tables to such a sum of income that defendant will net approximately $46,000.00 in take home income, resulting in a net monthly income of $3,833.33 while incarcerated. As discussed above, defendant has no necessities of life that are not already being supplied by the government. No argument is found in the pleadings as to appropriate amount for a canteen or prisoner trust fund from which defendant can pay for sundries, and the undersigned would have no concern with a modest monthly allotment to provide defendant with personal hygiene and other items not supplied by the Bureau of Prisons.

In sum, the defendant has had the benefit of two attorneys who worked hard and diligently in providing a robust defense for the defendant. That defense was provided at extraordinary cost and expense to the taxpayer for a person who has income that, even in retirement, well exceeds the national average. It would be contrary to the requirements of Section 3006A(f) and a travesty of justice for the defendant, having requested appointment of counsel under Section 3006A(f), to use his retirement benefits to build a personal nest egg, pay off debts, or pay off a criminal forfeiture judgment, when he has the ability to pay for the defense provided to him by the taxpayer. Justice requires that the undersigned recommend that defendant's Motion to Strike the Requirement to Reimburse for Court Appointed Counsel Fees be denied and that the government's oral motion that the amount of the monthly payment for reimbursement be increased be allowed.

The undersigned would further recommend that the defendant be ordered to pay to the Clerk of Court of the United States District for the Western District of North Carolina the sum of $3,800.00 per month as a monthly payment to reimbursement the taxpayer for the cost of his court appointed counsel until that obligation is totally and completely paid in full.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that the Motion to Strike Requirement to Reimburse for Court Appointed Counsel Fees (oral) be **DENIED,** and that the government's motion that the defendant's monthly payment for reimbursement of the cost of his court appointed counsel be increased be **ALLOWED,** and the amount of the monthly payment be increased from **$750.00** per month to **$3,800.00** per month.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten (10)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: January 16, 2009

Dennis L. Howell
United States Magistrate Judge